**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

JOSEPH J. IANNELLI

    Debtor                                          Chapter 7
                                                   Case No. 08-14419 (KCF)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GLENN MARIE

    Plaintiff ,

        vs.                                     Adversary No. 08-1641

JOSEPH J. IANNELLI                          **OPINION**
                                                  Trial: September 10, 2009
    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**APPEARANCES:**

Sean Del Duca, Esquire
BARRY, MCTIERNAN & WEDINGER
1024 Amboy Avenue
Edison, New Jersey 08837
Attorney for Plaintiff

Henry Gurshman, Esquire
10 Station Place, Suite 17
Metuchen, New Jersey 08840
Attorney for Defendant

THE HONORABLE KATHRYN C. FERGUSON, U.S.B.J.

On June 13, 2008, the Plaintiff, Dr. Glenn Marie, filed a two count non-dischargeability complaint against Joseph J. Iannelli. The Complaint sought to exempt $58,919.25 and attorneys fees from discharge. This Court denied a previous motion and cross-motion for summary judgment. The trial in this matter was held on September 10, 2009. The following are the Court's findings of fact and conclusions of law.

## Findings of fact

The Defendant, Joseph J. Iannelli, is a carpenter who has been in the construction industry for forty years. On November 9, 2003, Dr. Marie and Mr. Iannelli entered into a written contract for an addition and renovations on Dr. Marie's property located at 162 Tyler Ave., Middletown, NJ. [Ex. BC-D1] Although Dr. Marie made the initial payment in accordance with the terms of the contract, he did not make the balance of the ensuing payments according to the contract schedule. Instead, Dr. Marie testified, Mr. Iannelli would do work and request payments on an ad hoc basis and Dr. Marie would pay him as requested. Dr. Marie testified that he made some payments by check and others in cash. Mr. Iannelli's bookkeeping consisted primarily of a general ledger in which he recorded payments and expenditures. [Ex. BC-D13] At least one payment in the amount of $25,000, for which Dr. Marie has produced a copy of the cancelled check, does not appear in Mr. Iannelli's ledger. [Ex. BC-D2]

The parties agreed to numerous changes to the original contract but none of those changes were reduced to a work order or other written contract modification, despite the fact that their contract provided that all changes must be in writing[1].

---

[1] Contract provides: "Any alteration or deviation from specifications below involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." [Ex. BC-D1]

The parties also entered into an oral contract for the construction of a dental office at the Plaintiff's property located at 3044 Amboy Ave., Staten Island, NY, and Mr. Iannelli began work under that oral agreement. At some point, a disagreement ensued: Dr. Marie thought he had already overpaid Mr. Iannelli even though work remained to be done, but Mr. Iannelli refused to continue the work without further payments. As a result, Mr. Iannelli ceased work on both projects and threatened to file a lawsuit against Dr. Marie. Neither project was complete at the time Mr. Iannelli ceased work on the projects. After that, Dr. Marie hired other workmen to complete the projects. [Ex. BC-D3 - 10]

In October 2005, Mr. Iannelli filed a complaint for breach of contract in Superior Court in Middlesex County against Dr. Marie seeking $20,390 in damages. [Ex. BC-D18] Dr. Marie filed a counter-claim based on breach of contract, unjust enrichment, and constructive eviction. [Ex. BC-D19] The Superior Court commenced a jury trial on August 6, 2007, and on August 27, 2007 entered a judgment finding no cause on the complaint, and awarding damages on the counterclaim in the amount of $191,054.25. [Ex. BC-D20] The order of judgment indicated that the jury had included in its award the sum of $10,640 in damages under the Consumer Fraud Act. The court tripled that amount pursuant to N.J.S.A. 56:8-19 and added attorney's fees.

Dr. Marie seeks a finding in this adversary proceeding that the portion of the state court judgment based on the New Jersey Consumer Fraud Act is nondischargeable.

Conclusions of law

The First Count of the complaint seeks a determination of non-dischargeability under § 523(a)(2). Since the complaint does not indicate which subsection of § 523(a)(2) the plaintiff believes is implicated, there could be three theories under which the plaintiff seeks a judgment of non-dischargeability. The third subsection, § 523(a)(2)(C), is directed at credit card debt, so it has no applicability here. The second subsection, § 523(a)(2)(B), is directed at a written statement respecting the debtor's or an insider's financial condition so it, too, has no applicability here. Therefore, the Court will focus its analysis of the First Count on § 523(a)(2)(A).

The Second Count seeks a determination that the attorney's fees expended in attempting to collect this non-dischargeable debt are themselves non-dischargeable. The complaint itself does not indicate the legal basis for the relief sought and there is no mention of it in Dr. Marie's trial brief. Accordingly, the Court will presume that the Second Count has been abandoned and to the extent it has not, that the relief requested is subsumed within the relief requested in the First Count.

11 U.S.C. § 523(a)(2)(A)

This subsection provides that a debtor is not discharged of any debt :

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

11 U.S.C. § 523(a)(2)(A). Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). As in all § 523 cases, the burden of proof is on the creditor to establish all of the elements of §

523(a)(2)(A) by preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288-89 (1991). In order to prevail, a plaintiff such as Dr. Marie must establish that: (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiff relied on the representation; and (5) the Plaintiff suffered loss, which was proximately caused by the Debtor's conduct. De La Cruz v. Cohen (In re Cohen), 185 B.R. 180, 186 (Bankr. D.N.J. 1995), *aff'd*, 191 B.R. 599 (D.N.J. 1996); *aff'd*, 106 F.3d 52 (3d Cir.1997); *aff'd*, 523 U.S. 213 (1998).

Turning to the first element, Dr. Marie does not point to a specific material misrepresentation made by Mr. Iannelli. The Court can surmise from the trial testimony, however, that Dr. Marie is generally relying upon the fact that Mr. Iannelli claimed that additional money was owed under the contracts despite lacking precise records as to the payments that had already been made.

Assuming that is sufficient to establish the first element, Dr. Marie would then need to establish that Mr. Iannelli, at the time he asked for more money, had knowledge of the falsity of the misrepresentation or acted with reckless disregard or gross recklessness as to its truth. The record in this case supports a finding that Mr. Iannelli acted with gross recklessness. Mr. Iannelli did not keep a written record of the work change orders and the attendant costs on either project. He relies almost exclusively on his general ledger to establish the amount owed to him, but the ledger is demonstrably inaccurate. For example, a payment by Dr. Marie in the amount of twenty-five thousand dollars is not reflected in the ledger. Mr. Iannelli's former partner,

Joseph Annicchicarico, testified that Mr. Iannelli was "the worst book keeper in the world, " and he may well be right. Based on the foregoing, the Court can conclude that when Mr. Iannelli claimed that more money was due, his statement was made with reckless disregard as to its truth.

Next, Dr. Marie would need to establish that Mr. Iannelli made the misrepresentation with intent to deceive. Because of the difficulty of proving fraudulent intent directly, courts hold that intent may be inferred from the totality of the circumstances of the case. *See, e.g.,* In re Cohn, 54 F.3d at 118-19. This is where Dr. Marie fails to meet his burden. All of the trial testimony indicates that Mr. Iannelli resolutely believed he was owed additional money at the time he asked Dr. Marie for it. The trial testimony reveals that on the last day Mr. Iannelli went to Dr. Marie's property in Middletown to review the outstanding invoices, he told Dr. Marie that he felt he was owed additional payments for all the extras on the project. More tellingly Mr. Iannelli initiated suit in state court to collect the money he thought he was entitled to. Regardless of whether he was correct in his convictions, it is simply illogical to think that Mr. Iannelli would file suit to collect fees if he knew he had been overpaid and intended to defraud Dr. Marie. It bears repeating that Mr. Iannelli did not make the claim of overpayment as a counter claim or as an affirmative defense: he **initiated** litigation to collect the monies he, apparently erroneously, believed Dr. Marie owed him.

Courts have held that a reckless disregard of the accuracy of information has a bearing on an intent to deceive. *See, e.g.*, In re Cohen, 191 B.R. 599, 605 (D.N.J.1996); In re Costanzo, No. 05-42920, 2006 WL 2460639, *4 (Bankr. D.N.J. Aug. 23, 2006) ("'Intent to deceive may be inferred from the totality of the circumstances, including a reckless disregard for the truth.' "); In

6

re Schroeder, No. 01-14748, 2006 WL 4452975, * 13 (Bankr. D.N.J. Mar. 31, 2006). In this case, however, the Court finds that the permissible inference is trumped by other circumstances, most notably that Mr. Iannelli filed a lawsuit for breach of contract. The totality of the circumstances in this case compels the conclusion that while Mr. Iannelli may have shown reckless disregard for the truth, he lacked the requisite intent to defraud Dr. Marie.

Since Dr. Marie must establish all five elements to carry his burden of proof, failure to prove the intent element is fatal to his cause of action. Additionally, however, the Court questions whether Dr. Marie carried his burden with regard to the fourth element: reliance. The Supreme Court has held that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance. Field v. Mans, 516 U.S. 59, 74-75 (1995). The Court explained the meaning of that statement:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.

Field v. Mans, 516 U.S. at 76. Dr. Marie testified that he did not have a written contract for the construction project in Staten Island and did not hold Mr. Iannelli to the requirement in his written contract for the Middletown project. Additionally, the parties significantly expanded the scope of work under the contract and exchanged tens of thousands of dollars all with no apparent accountability. There is no evidence that Dr. Marie ever requested any accounting of payments made or even obtained receipts prior to the time Mr. Iannelli stopped work on the projects. Dr. Marie testified that he did not hold Mr. Iannelli to the payment schedule in the Middletown contract and simply gave Mr. Iannelli money whenever he asked because he assumed that between the two projects he owed it to him somewhere. Justifiable reliance is an

amorphous standard, but the Court questions whether Dr. Marie satisfies it.

The Court finds that the Plaintiff did not carry his burden under § 523(a)(2)(A); therefore, judgment on the First Count of the Complaint is denied.

<u>Res judicata</u>

In his trial brief, Dr. Marie renews his argument that the portion of the state court judgment based on New Jersey's Consumer Fraud Act should be found to be non-dischargeable on the basis of *res judicata*. This Court first addressed that argument in the motion for summary judgment. The doctrine of *res judicata*, also called claim preclusion, requires: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." <u>Board of Trustees of Trucking Employees of North Jersey Welfare Fund v.Centra</u>, 983 F.2d 495, 504 (3d Cir. 1992). In denying summary judgment, this Court explained that Dr. Marie had not established the third element. The Court acknowledged that in the bankruptcy context whether something is "based on the same cause of action" is viewed liberally, <u>CoreStates Bank, NA v. Huls America Inc.</u> 176 F.3d 187, 194 (3d Cir 1999), but noted that Dr. Marie still must establish that the elements of New Jersey's Consumer Fraud Act track those of § 523(a)(2)(A).

To that end, Dr. Marie now argues that: "As to whether both actions involve the same issue, it is clear that at all times Creditor accused Debtor that he engaged in fraudulent and/or reckless conduct to the financial detriment of Creditor." *Pl. Trial Brief* at 7. Unfortunately for Dr. Marie, that is far from clear. Dr. Marie's counterclaim in the state court action did not contain a cause of action based on New Jersey's Consumer Fraud Act or common law fraud. The counterclaim was based on breach of contract, unjust enrichment, and constructive eviction.

A review of the state court record does not prove any more enlightening.  There is nothing in the jury charge that suggests that the jury was instructed on the elements of fraud.  Nonetheless, the jury somehow determined that Dr. Marie suffered $10,640 in damages based on violation of the Consumer Fraud Act.  At trial in this action, Dr. Marie was asked what that damages figure was based on and he was unable to say.  Mr. Iannelli maintains that the only Consumer Fraud Act issue litigated was that of failure to obtain written change orders.  That would be consistent with the proofs that were presented.  If that is the case, then the state court ruling would not be a basis for *res judicata* in this action.  As a bankruptcy court in this district has found: "the applicability of the Consumer Fraud Act to the immediate case is not a critical part of this court's consideration. Exception to discharge based upon 11 U.S.C. 523(a)(2)(A) requires a showing of actual fraud, not merely fraud that would be implied in law."  In re Santos, 304 B.R. 639, 651 (Bankr. D.N.J. 2004).  While a finding of common law fraud (the elements of which track § 523(a)(2)(A)) will almost always support a finding of a violation of the Consumer Fraud Act, the reverse is not always true.  *See, e.g.*, In re Curriden, 2007 WL 2669431, 9 (Bankr. D.N.J. 2007) (an intent to deceive is not a prerequisite to the imposition of liability under NJ's Consumer Fraud Act); Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997).  Because Dr. Marie is unable to show that his state court judgment was based on the jury finding all five elements of fraud present, he may not rely upon its *res judicata* effect to carry his burden  in this non-dischargeability action.

Conclusion

The Plaintiff, Dr. Marie, did not sustain his burden of proof on the first count. Judgment is denied and the complaint is dismissed. Defendant should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: October 2, 2009